Thank you. Good morning, Your Honor. I'd like to try to reserve around five minutes for rebuttal, please. Okay. Presenting Judge Watford, may it please the Court, my prepared remarks focus on the issue of the legality of President Biden's removal without cause of the National Labor Relations Board's former General Counsel Peter Raab before his four-year term expired. Don't you want to do the exact thing that SELA law said can't be done? SELA law, this panel is very familiar with that case, obviously. SELA law presented an issue not presented here, the constitutionality. The statute clearly said the head of the Consumer Financial Protection Board can be removed only for cause. And the issue was, does that violate the constitution? Well, the board doesn't argue that our interpretation violates the constitution. This is purely a statutory issue. Does or not the statute protect General Counsel Raab from removal without cause? And what was wrong with the Fifth Circuit's recent decision, and why do you suggest that we create a circuit split? SELA didn't address the issue. SELA, the Fifth Circuit case, the key part of the opinion said the legislature doesn't, the President doesn't need to receive from the legislature the power to remove an agency employee. What they said was that the Act does not provide tenure protections for the General Counsel. So, if that's true, then the Counsel can be removed at will. If there's no tenure protection, they can be removed. That was the holding. And where is, where do you think there's tenure protection in the statute? I mean, three reasons. Consistent with cases such as Wiener v. United States. No, I want words in the statute. What words in the statute create specific tenure for the General Counsel or some specific protection against what happened here? I apologize, Your Honor. Section 153D, the four-year term of office for the General Counsel. And I, and I take the board's argument, wait a minute, but that's, but there's no explicit removal provision, and that's very different from 153A, governing board members. I take the argument. Here's why that argument should not prevail. Look at the, the board members and the General Counsel have protection for removal without cause, but board members enjoy more robust protections. Here's what I mean. Look at the two for-cause provisions for the board members in 153. Neglect of duty or malfeasance in office. Exactly. Neglect of duty. The board member goes to the beach every day. That's legitimate reason. Malfeasance. The board members in prison for committing embezzlement. And how do you reconcile your position with the Collins, the Supreme Court's decision in Collins, which held that court, that were to presume that an officer serves at the president's pleasure if the statute does not preclude the power to remove the head of an agency? Well, Collins is readily distinguishable because look at the facts of Collins. That addressed the direction. No, I'm asking not, not about the, the, the facts. I'm asking about the presumption that the president has the power to remove. The statement that Collins made about the presumption that if there's no limitation on removal, we presume Congress meant not to remove, I'm paraphrasing, it doesn't apply to this case because it begs the question, what about the term of office? There was, the point is there was no term of office. There was no fixed term of office for the acting director, which was at issue in that portion of Collins. Begs the question, what if there's a term of office? And we're contending that it is the term of office that places for cause removal. And the reason why there is... Where's a case, where's a case that succeeded on that argument alone? Well, Weiner versus United States, that was the war claims commission. The commissioners had solely a term of office and the Supreme Court held unanimously that provided a for cause removal restriction for the commissioners. That's one of the three of my three arguments. It's the term itself. The history that until last year, no president had ever purported to remove a general counsel without cause in the nearly eight decades of the board's history. And number three, the contrast with the more robust restrictions for board members, because what is the 153A say after setting forth neglect of duty and malfeasance? It's very pointedly says, but for no other cause. So what's the other cause that's so pointedly excluded? Insubordination. So if President Biden says to a board member, whenever one of these... Well, it's insubordination, malfeasance in office. I mean, I would certainly consider it sounds like malfeasance to me. Well, I'm unaware of a case holding that malfeasance in office includes insubordination. Why wouldn't though? The cases... If you follow the boss's rules, why isn't that malfeasance? It's not the same as stealing, but it doesn't say really, really bad malfeasance. Or why isn't that neglect of duty if your person tells you to do something and you don't? Or wouldn't it be malfeasance? I have not seen the cases give it that meaning. The PHH, the DC Circuit case in PHH surveyed the cases and the treatises. And it said insubordination fits in typically the third cause that's often given, which is inefficiency. That when Congress spells out... Sometimes Congress just says without cause. Sometimes Congress spells out the causes and typically says neglect of duty, malfeasance in office, or inefficiency. And PHH surveyed the cases holding that insubordination can be a type of inefficiency in office. I didn't see any cases cited in PHH holding that insubordination, refusing to follow the president's directives can be malfeasance in office or neglect of duty. Isn't the common law word for that misfeasance in office as opposed to malfeasance? I don't know the answer to that. It's a separate bucket. I'm not familiar with that. I apologize. But if I'm right about that, I think I must be right because consider this hypothetical. President Biden says to the board member, whenever there's a charge alleging misclassification as a supervisor, I direct you to rule in favor of the employee. The board member says, no, I can't do that. I'm going to apply the law to the facts. President Biden, I think that board member is protected from removal for cause. I don't think that's malfeasance. I don't think that's neglect of duty. And those are the only two grounds. But contrast that with general counsel. President Biden says to the general counsel, whenever there's a charge alleging misclassification as a supervisor, I want you to file a complaint. I don't care what the facts are. We need more complaints. I direct you to file a complaint under any time there's a charge of misclassification. And the general counsel says, I'm not going to do that. I'm going to apply the law to the facts as I see them and exercise my discretion. President Biden can remove that general counsel for cause in subordination. That's why that's that's why that that's the third reason why we say despite the absence of an explicit for removal provision for the general counsel, when it's read in conjunction with the two explicitly limited grounds for removal of board members. That's why there is implicit for cause during the term of office. Counsel, would you like to go to the merits of your case? No, I mean, I prepared my remarks on this. Well, you are prepared to argue the merits. Are you not? I am your honor. Good. OK. The boards in the blue brief, you say the board's regional director was wrong in concluding that the record I'm inserting was insufficient to prove the RNs were supervisors due to lack of specific evidence. Because general evidence of this sort is sufficient to prove supervisor status, especially when there are no findings to the contrary. And you cite a lawyer's box. We all know NLRB. And the government points out in in its red brief that ask ashes quotation from a lawyer's box that supervisory status was, quote, based on work assignments that were never identified. And an independent judgment that was never described, close quote, is taken out of context. The court was merely reciting the employer's argument, not upholding the board's finding on such grounds. I want you to discuss that. Did you take it out of context or not? I have not reread that case to prepare to prepare for this argument. Even after that statement in the red brief? My my response to that, Your Honor, would be there is evidence of the record that the registered nurses did have responsibility for assigning nurses. But that's not but that's not a response to my question. The question was, did you take it out of context? I'm not prepared to defend whether or not we took that quote out of context. Your Honor, I have not reread the case to prepare for this argument. I apologize. Okay. In the blue brief, two page, a couple of pages later, the same page, you cite schnuck markets for the same proposition that general evidence is sufficient. And again, unlike this case, the court relied on specific evidence of the putative supervisory actions when other management was not in store. By my count, there were four subordinate employees in schnuck markets that each cited numerous specific examples of the employee exercising independent supervisory authority, not a single store manager, as you assert in your opening brief. Explain that. Well, Your Honor, my my response would be that there in the Ninth Circuit. The law is clear. As cases like for. I mean, I'm asking you about miscitements of authority. You should be prepared to jump on it. Your Honor, I'm I'm prepared to address it, but from a different direction that that case, the schnuck case. I also am not prepared to cite, you know, where exactly we were quoting and why it was a correct quote. But if I could try to address your question, maybe another way. Which is we did cite evidence in the record that when the director was out during evenings and weekends, the registered nurses did have responsibility to direct the nurses under their charge. And the fact that there was no specific example of on this date, this registered nurse did exercise this discretion is insufficient. Specifically, what kind of discretion in your view does the record demonstrate? Well, they were in charge of the nurses when the directors were out. And in addition to the general charge when the directors were out, there's evidence that the registered nurses assigned the nurses to their. Well, I thought I thought that they simply put the nursing aid names on the assignment sheet based on where they were already established to be. I don't think they had released. I don't recall anything that shows that they could say change and say, you know, X shouldn't be in that location. X should be over in this other wing. I think I think they didn't establish the that. Where do you find that? On page 55 of the record, Your Honor, and also on pages 154 to 155 of the record, we quoted the administrator, George Lamb, describing what discretion registered nurses had to conduct those assignments. What was the first page site you gave? I'm sorry. I'm sorry. 55. 55 and 155. And 154 to 155. And we quoted administrator Lamb as saying the RNs had to use knowledge of the residents. They had to use good judgment to determine the workload and they prepare the assignment sheet independently and the nurses follow the assignment sheets. I believe my time has expired. It has. We'll give you a couple of minutes for a little bit. Don't worry. Let's hear from counsel for. Thank you. I guess both the board and DOJ or just it's a joint joint argument here. How are you going to do this? You're on. You're you're mute. Hi. Good morning. Heather Beard for the NLRB. I was going to speak to the what you call the merits of the case. The labor law supervisory issue for eight minutes and then I was going to save seven minutes for my colleagues and show that that works for the court. Sure. Maybe. I don't know if you want to flip the. We could. No, no. The time allocation is just eight minutes for the merits. Given your counsel's pretty meager, your opponent's pretty meager presentation on the merits seems excess. You don't have to. Sure. If I leave. How about this? If I whatever time I leave, I would love to see that time to Mr. Schultz. Very good. OK, thank you. So I'm Heather Beard from the NLRB and I'm going to address Akash's failure to establish that the RNs here at issue were supervisors under the act. The failure was a failure of evidence, a failure of proof and a failure under the standards of this court, as well as the standards of the board. And if I could go directly to what I believe my opponent was citing just now on the factor, the indicia rather of supervisory authority asserted of assignment. Two of those pages in the record in 2 ER 154 and 155 are not testimony, but rather they are the assignment sheets to answer Judge Graber's question. And if you turn to those assignment sheets, as we as we stated in our brief, in order for the employer to shoulder its burden of proof, they have to demonstrate that there not only is assignment, but that the assignment is done with independent judgment. And with independent judgment, the board has said in the Oakwood decision, which is completely absent from my opponent's brief, that there needs to be an assessment with regard to chart nurses of the skills that these particular RNs have, as well as the patients. This assignment sheet, which is in the record, demonstrates, if anything, you know, the board doesn't have to show that they're not supervisors. It has to show that Akash did not prove they were. But if there's contradictory evidence, the law has said that that goes toward them failing their burden of proof. And if you take a look at the assignment sheets, essentially what the RNs were doing, the record shows, is they're balancing so that predetermined groups that are on this sheet, Group A, Group B, Group C, and Group D, have the same amount of patients in beds for each certified nursing assistant who is working. So, balancing of workloads in the seminal case of Oakwood, the board has found is not sufficient to establish that the charge nurses are using independent judgment and matching skills of the RNs, charge nurses, or of the CNAs to the patients. So, those two pieces of evidence do not establish, by any standard, that this quarter the board has looked at that the requisite independent judgment was established here for the assignment category. As far as the testimony of, there was one person who was testified, and that was the head. That was Administrator Lamb. And he gave conclusory, oh, I'm sorry. Is someone interrupting? No, go ahead. Okay. So, he gave what, conclusory, sort of a textbook example of question from counsel, did the nurses exercise authority to do X? Did they give, did they exercise authority to do Y? And his answers that they did are what the board has found and what this court in the United Nurses case in 2017 has found to be conclusory, not sufficient to establish the requisite independent judgment to exclude these employees under the act from their union representation as supervisors. So, that takes care of, I believe, assignment here. I'd also be lax if I didn't point out, as we said in our brief, there's also some licensed vocational nurses, LDNs, who do, as the employer admits, the exact same thing in assignment as these RNs, and they stipulated that those folks are not supervisors. So, when you have sort of line of employees doing the same thing as employees you are alleging are supervisors, this court has found, it's the Parma case, that that does not indicate the burden of proof necessary to establish that they are supervisors. So, if you'll go, Judge Graber, you also asked about the responsible direction, and we'd like to just point out two quick things on that. First of all, in order for there to be responsible direction, the law is clear, there needs to be accountability, and as we show in our brief, there needs to be accountability for the person who's the alleged supervisor for the mistake or problem of the employee that they're directing. In order for that to be responsible, there's absolutely no evidence of that here. In fact, the statement by the administrator, Lamb, is, well, they would in their performance evaluations, which were not provided, which this court, as well as the board has helped, that kind of conclusory evidence, statements, assertions, do not carry the day when it comes to proof of supervisory status. And I think our brief also very well makes the point that the third indicia alleged by Akash to strip these employees of their representational rights is based on a note for a warning that was given by an RN to another RN. And as the case law makes clear, that does not constitute discipline, and because it does not constitute discipline, nor does it indicate the requisite independent judgment, the board reasonably concluded there was substantial evidence indicating there was no meeting of the burden of proof here by Akash under any standard. So we would submit that. And so on the merits of this case, as well as for the reasons my colleague, Ben, will provide about the removal issue, the board's decision is supported by substantial evidence. It should be enforced. Okay, very good. Thank you. Thank you, Your Honor. Benjamin Schultz from the Department of Justice, also on behalf of the NLRB, and I'll be addressing the GC removal issue. As Your Honors has already noted, the Supreme Court in Collins v. Yellen reiterated its already longstanding case law that unless a statute clearly says otherwise, the normal rule is that you presume that the President's removal power is at will. Now, there is a narrow exception to that presumption, and in Collins, the Supreme Court addressed that in a footnote, and that's the Wiener case. The Supreme Court very clearly distinguished that as being an agency that was primarily adjudicative. That exception does not apply here because the General Counsel is not adjudicative at all. It's an officer that is very consciously prosecutorial, and indeed, Congress very consciously carved out the prosecutorial functions of what had been the prior board before the 1947 amendments and gave the prosecutorial functions to the General Counsel and left the board members to handle the adjudicative parts of the agency. So we think this is a clear case where you would apply the Collins presumption, and applying that presumption, there's no reason at all to think that the General Counsel is anything other than removable at will. Now, we think that that can easily resolve this case, but if the court needs more, it can also apply the canon of constitutional avoidance because there are at least substantial constitutional questions whether Congress could even impose any removal restrictions on the General Counsel. I'm happy to address any other aspects of the argument, but we think that this case is quite clearly addressed by the existing case law as well as this court's case law in the Stanley case where the court recognized that a term of office just sets an outer bound normally for when the term ends and doesn't otherwise create a restriction on the President's removal powers. I think I have just one question about maybe your response to your opponent's invocation of history, invoking, you know, this is the first time ever and isn't that historical precedent somehow entitled to wait? Am I remembering right that there are opinions maybe from OLC or some other folks in DOJ that said, well, actually, we do think the President has this authority, but it just had never been exercised? Your Honor is right. If you look at our brief, we cite a memo that John Roberts, who was then in the White House Counsel's Office in the 1980s, wrote to the White House Counsel in which he explains that OLC took the view in both the Eisenhower and the Reagan administrations that the General Counsel was removable at will. In addition, we cited an article written in 1950 by the former General Counsel of the Board, Robert Denham, who explained that in 1950, President Truman demanded his resignation. Denham resigned and expressed his understanding that that was because he believed that President Truman had the unfettered discretion to fire him so that we think that was tantamount to a removal, even if it was effectuated via a resignation. We've also cited a quote from President Truman also from 1950 in which, with reference to the General Counsel, he publicly said that if he has the power to appoint, then he also has the power to remove unless the law says that that's not the case. And, of course, there's nothing in the National Labor Relations Act that overrides that basic background principle. Okay. Very good. Thank you. Anything else from my colleagues? No. Okay. I think we're in good shape. Thank you both for your argument. Let's give two minutes on the clock for rebuttal, please. Thank you, Your Honor. So former General Counsel Denham resigned.  He resigned. My friend's calling the Collins presumption that when Congress does not limit removal, there's a presumption that there's no limit. It doesn't apply here because the four-year term of office is the limitation on removal. And my friend's argument that this court should give the act their interpretation under the Doctrine of Constitutional Avoidance should not carry the day. They don't cite any case where the court has applied that Doctrine of Constitutional Avoidance to this issue of the president's removal power. And there is not a significant constitutional issue. As we explained in our brief, the general counsel's duties are analogous to the duties of the independent counsel upheld to be permissibly protected from removal without cause. In the Morrison v. Olson case, there was no constitutional issue regarding the removal restrictions placed on the independent counsel. Okay. Thank you. We appreciate all of your arguments. The case just argued is submitted, and we are adjourned for the day.
judges: GRABER, WATFORD, UNKNOWN